UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    16-CR-142-WMS-MJR
                                             REPORT, RECOMMENDATION,
          -v-                                AND ORDER

CARLIQUE DeBERRY,

                    Defendant.
_____

        This case has been referred to the undersigned by the Hon. William M. Skretny

pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon

dispositive motions.  (Dkt. No. 2).  Before the Court are defendant Carlique DeBerry's

pre-trial motions:  (1) to suppress the statements he made to the Town of Hamburg

Police on February 26, 2016; (2) to exclude statements by non-testifying co-

conspirators; (3) for a bill of particulars; (4) to reveal identity of informants; (5) for

discovery pursuant to Fed. R. Crim. P. ("Rule") 16; (6) to compel production of *Brady*

material; (7) for disclosure of evidence pursuant to Rules 404(b), 608, and 609 of the

Federal Rules of Evidence; (8) for disclosure of witness statements; (9) for preservation

of rough notes and other evidence; (10) for grand jury transcripts; (11) to *voir dire*

government experts outside the presence of the jury; (12) for an audibility hearing; and

(13) for leave to file other motions.  (Dkt. No. 11).  Also before the Court is the

government's motion for reciprocal discovery.  (Dkt. No. 12).  The Court heard oral

argument on the motions on April 20, 2017.

## **BACKGROUND**

        The following background information is taken from the Indictment (Dkt. No. 1),

the affidavit of defense counsel submitted in support of the defendant's pre-trial motions

(Dkt. No. 11), the government's response to the defendant's pre-trial motions (Dkt. No. 12), and the video recording of the defendant's post-arrest interview with the Town of Hamburg Police on February 26, 2016.[1]

The charges against the defendant arise out of his alleged sale of fentanyl to a person identified as "R.G.," the use of which resulted in R.G.'s death. Shortly after midnight on February 26, 2016, R.G.'s mother called 911 to report finding R.G. slumped over in a chair at the home they shared in Hamburg, New York. Responders to the home found three glassine envelopes and a straw. One of the envelopes was lab-tested to contain fentanyl, and an autopsy later determined R.G.'s cause of death to be acute fentanyl intoxication. Town of Hamburg Police Officers took R.G.'s cellular phone from his home after his death.

On the morning of February 26, 2016, R.G.'s cellular phone received a text message from a 470-area code number soliciting a call. The phone showed prior text message exchanges with the 470 number, and the messages appeared to be drug related. Pretending to be R.G., one of the Officers sent a text message back to the 470 number. In the ensuing exchange, the individual behind the 470 number stated that the product from last night was "pure." The Officer arranged to meet the individual at a Walmart parking lot to buy more of the product. That afternoon, the defendant arrived at Walmart and pulled his vehicle up to the Officer with what would be lab-tested to contain fentanyl. The Officer called the 470 number with which he had exchanged text messages using R.G.'s phone, and a phone in the defendant's possession began to ring. The defendant was then arrested on state charges relating to the undercover

---

[1]    With defense counsel's consent, the government submitted the video recording to the Court for its review. The Court has reviewed the recording in its entirety.

operation and transported to the Town of Hamburg Police Station, where he was interviewed by Officers Bullard and Jasinski.[2]  During the interview, the Officers told the defendant that they were not "looking" at him, but at R.G., who the Officers falsely claimed sold drugs to children.  The Officers further told the defendant that they would "go to bat" for him if he cooperated with their investigation of R.G.  The defendant acknowledged selling "heroin" to R.G. the night before, and that he expected to sell heroin to R.G. at the Walmart parking lot that afternoon.  He signed a written statement to that effect as well.

On November 9, 2016, the defendant was charged in a two-count indictment. (Dkt. No. 1).  Count 1 charges the defendant with the distribution of fentanyl on or about February 25, 2016, the use of which resulted in the death of R.G., in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C), while Count 2 charges the defendant with possession with the intent to distribute fentanyl on or about February 26, 2016, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C).  (*Id.*).  The defendant thereafter filed a motion to suppress statements along with several non-dispositive pre-trial motions.  (Dkt. No. 11).  The defendant's motion to suppress statements (*id.* ¶¶6-17) does not precisely identify what statements he is seeking to suppress, but based on the Court's review of the motion and the arguments made therein, the Court construes the motion as seeking to suppress as involuntary the oral and written statements the defendant made to Officers Bullard and Jasinski during the February 26, 2016 interview at the Town of Hamburg Police Station (*see id.* ¶¶9-14).  The Court does not construe

---

[2]        The *Miranda* form signed by the defendant shows that it was Officers Bullard and Jasinski who interviewed the defendant.  (*See* Dkt. No. 12-1).  It is unclear, though, whether Officers Bullard and Jasinski are the Officers who took possession of R.G.'s phone and participated in the undercover operation that led to the defendant's arrest.

the motion as seeking suppression of any pre-arrest statements, as the defendant has not provided any argument in that regard.

The Court heard oral argument on the defendant's motions on April 20, 2017. During argument, defense counsel asked the Court for permission to supplement the defendant's suppression motion with a memorandum of law and an affidavit from the defendant. The Court granted defense counsel's request, directed the supplemental papers to be filed on or before May 11, 2017, and informed counsel that it would review the papers to determine whether additional argument or a suppression hearing is necessary. (*See* Dkt. No. 14). The defendant did not file any supplemental papers.

## DISCUSSION

The Court will address the defendant's motion to suppress statements before turning to his non-dispositive pre-trial motions.

I. *Motion to Suppress Statements*

A. *Request for a Hearing*

As reflected in the Court's scheduling order, a motion to suppress statements ordinarily must be accompanied by an affidavit from an individual with personal knowledge of the statements. (Dkt. No. 9). "[A]n attorney's affidavit, absent personal knowledge, is insufficient to justify a suppression hearing." *United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004); *see also United States v. Marshall*, No. 11-CR-381-RJA-JJM, 2012 WL 5511645, at *2 (W.D.N.Y. Nov. 9, 2012) (same), *report and recommendation adopted*, 2012 WL 5948782 (W.D.N.Y. Nov. 28, 2012). Here, the defendant's suppression motion is supported only by the affidavit of defense counsel; the defendant did not submit an affidavit from himself despite receiving an extension of

time to do so.  Absent an affidavit from the defendant, his request for a hearing should be denied.

        B.    *Suppression*

The defendant argues that his oral and written statements to Officers Bullard and Jasinski at the Town of Hamburg Police Station on February 26, 2016 should be suppressed as involuntary.  (Dkt. No. 11 ¶¶6-17).  The voluntariness inquiry, conducted under the Due Process Clause of the Fifth Amendment, asks whether "the confession [is] the product of an essentially free and unconstrained choice by its maker[.]" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) ("Is the confession the product of an essentially free and unconstrained choice by its maker?  If it is, if he has willed to confess, it may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.") (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). Because "[n]o single criterion controls whether an accused's confession is voluntary[,] whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances."  *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988).  "In applying the totality of the circumstances test, those factors that a court should consider to determine whether an accused's confession is voluntary center around three sets of circumstances:  (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials."  *Id.* at 901-02.  "After considering these factors, the court decides whether 'under the totality of circumstances a suspect's will was overborne and the confession was not therefore a

free and voluntary act." *United States v. Haak*, 215 F. Supp. 3d 218, 225 (W.D.N.Y. 2016) (Vilardo, J.) (quoting *Green*, 850 F.2d at 902).

"The prosecution has the burden of establishing by a preponderance of the evidence . . . that [the defendant's] confession is truly the product of free choice." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). "However, where a defendant claims that the confession was induced by official trickery, deception or misrepresentation . . . it is the defendant's obligation to show clear and convincing evidence of a material deception." *United States v. Sacco*, 884 F. Supp. 734, 745-46 (W.D.N.Y. 1995). Put another way, the defendant has the burden of showing "that the misrepresentations materially induced [him] to make incriminating statements." *United States v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992); *see also Haak*, 215 F. Supp. 3d at 236 n.5 (McCarthy, M.J.) ("The prosecution must prove at least by a preponderance of the evidence that the confession was voluntary. However, where a defendant claims that the confession was induced by official trickery, deception or misrepresentation it is the defendant's obligation to show clear and convincing evidence of a material deception. It must also be shown that the misrepresentations materially induced the defendant to make incriminating statements.") (internal citations, quotation marks, and alterations omitted).

### 1.   *Characteristics of the Defendant*

Under the first set of circumstances, the Court looks to the defendant's age, education, intelligence, criminal record, and his familiarity with police questioning. *See Green*, 850 F.2d at 902; *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995). Here, the defendant was thirty-seven-years old at the time of the interview. He has a

GED (14:18)[3] and was taking classes to earn a commercial driver's license (30:15). Based on his conduct and manner during the interview, he appears to be of at least average intelligence.  It is unclear whether the defendant faced police questioning before the interview, but he does have an "extensive" criminal history.  (51:05).  The Court takes judicial notice of the docket in *United States v. DeBerry*, 14-CR-82-WMS, which shows that the defendant is on supervised release for a bank fraud conviction in this Court in 2014.

## 2.  *Conditions of the Interrogation*

In assessing the conditions of the defendant's interrogation, the Court considers where the interrogation was held, the length of the defendant's detention, and the presence or absence of counsel.  *See Green*, 850 F.2d at 902.  In this case, the Officers interviewed the defendant in a room at the Hamburg Police Station soon after they arrested him in a Walmart parking lot.  The interview began around 5:30 p.m. and lasted approximately fifty-four minutes.  The defendant was not represented by counsel during the interview, as he waived his *Miranda* rights before questioning.[4]  *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) ("Before petitioner made any incriminating statements, he received partial warnings of his constitutional rights; this is, of course, a circumstance quite relevant to a finding of voluntariness."); *Green*, 850 F.2d at 903 ("Concededly, petitioner was apart from family, friends, and legal counsel throughout this time.  This factor is dispelled though by the fact that [petitioner] was given his *Miranda* rights . . . immediately preceding the questioning that led to his confession

---

[3]    Citation refers to the timestamp on the video recording of the defendant's interview with Officers Bullard and Jasinski.
[4]    The defendant has not moved to suppress his statements on the basis of any alleged *Miranda* violation.

[and] stated that he was willing to answer questions without the presence of an attorney."). In addition, when the defendant reviewed and signed his written statement, he read, initialed, and signed a *Miranda* waiver form. (37:45); Dkt. No. 12-1 (executed *Miranda* form).

### 3.    *Conduct of the Officers*

The final circumstance the Court must consider in determining the voluntariness of the defendant's statements is the conduct of Officers Bullard and Jasinski. *See Green*, 850 F.2d at 902. "Facts bearing on that conduct include the repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights, whether there was physical mistreatment such as beatings, or long restraint in handcuffs, and whether other physical deprivations occurred such as depriving an accused of food, water or sleep, or even of clothing for a prolonged period. In addition . . . such police conduct might include psychologically coercive techniques such as brainwashing or promises of leniency or other benefits." *Id.*

In this case, Officers Bullard and Jasinski interviewed the defendant for less than one hour. The defendant was relatively comfortable during the interview — he wore casual clothes, sat in a chair, and drank soda. He was not handcuffed or otherwise restrained, and the Officers did not use physical force to secure his confession. The Officers did, however, use certain interrogation techniques to encourage him to talk. After confirming with the defendant that he still wanted to talk (:30), and having advised him that he was going to be charged with "possession with the intent to sell" (1:00), the Officers told the defendant that they were not "looking" at him, but at R.G., who the Officers falsely claimed sold drugs to "underage kids" (1:15). The Officers asked the

defendant if he sold to R.G. in the past, but they cautioned him that they "already knew the answer[ ]" to this and other questions.  (2:20).  The defendant acknowledged selling crack-cocaine to R.G. on a prior occasion.  (2:35).  After telling the defendant that his cooperation would "go a long way" (4:45), the Officers asked him when he last spoke with R.G.  (7:08).  The defendant said yesterday.  (7:12).  The Officers then asked the defendant if he sold anything to R.G. last night, and the defendant said "heroin."  (8:29).  The Officers again told the defendant that they were not looking at him, but at R.G., and that they would like a statement from him to use against R.G.  (9:20).  If the defendant cooperated, the Officers would "protect" and "go to bat" for him.  (9:30).  When the defendant asked if his cooperation would secure his release, the Officers said they would have to check with their lieutenant to "see what [they] could do" based on the information the defendant supplied to them.  (12:14).

One of the Officers typed up a written statement during the defendant's confession, and approximately thirty-seven minutes into the interview, the Officers gave the statement to the defendant for his review.  (37:40).  Before the defendant started reviewing the statement, the Officers commented about "some stuff that [they] can do" together that might help the defendant out.  (38:58).  The defendant then reviewed and signed the statement and initialed and signed a *Miranda* waiver form.  (39:00).  The Officers told the defendant that they would check with their lieutenant to see what they could do, but first they wanted to know if he could give them some names or do a controlled buy.  (42:15).  If the defendant could help "set up" other people, then the Officers could go to the District Attorney and "say hey, you know what, he did, this, this, and this."  (43:20).  The Officers told the defendant that they "can't promise [him]

anything," but based on their experience, those who cooperate "always benefit[ ]." (43:30). The defendant did not give the Officers any names, but he did say that he would let them know if he came across anyone of interest. (45:30). The Officers then looked through the defendant's phone with his consent. (45:45). Approximately fifty minutes into the interview, the defendant again brought up getting released from custody: "Can I ask y'all a question? I've been honest with y'all, I've cooperated with y'all, told you everything I know as far as [R.G.], can y'all please help me get released today?" (50:40). The Officers told the defendant that they would "try [their] best," but that it is their lieutenant's decision to make. (50:50). The interview concluded approximately four minutes later.

The defendant argues that his statements to Officers Bullard and Jasinski were involuntary because the Officers misled him to believe that he would be released if he cooperated. While "[m]aterial misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will," *Ruggles*, 70 F.3d at 265, "vague promises of leniency for cooperation . . . generally will not, without more, warrant a finding of coercion, *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002). Here, the Officers did not specifically promise the defendant that he would be released if he cooperated; rather, they said that his cooperation would "go a long way," that they would "protect" and "go to bat" for him if he cooperated, that they would check with their lieutenant to "see what [they] could do" about his release, and that they could advise the District Attorney of his cooperation. After mentioning the District Attorney, the Officers cautioned the defendant that they "can't promise [him] anything." Moreover, the Officers told the defendant at the outset of the interview that he was going to be charged with

-10-

"possession with the intent to sell."  Considering the totality of the interview, the Officers' statements regarding cooperation qualify as vague promises of leniency, not material misrepresentations or unfulfillable promises.  Without more, these vague promises do not render the defendant's confession involuntary.

The defendant also argues that the Officers overcame his free will by tricking him into believing that they were looking not at him, but at R.G.  Trickery on the part of the police does not necessarily render a confession involuntary.  *See, e.g.*, *Frazier*, 394 U.S. at 737-39.  "Regardless of whether the agent's statements were false, misleading, or intended to trick and cajole the defendant into confessing, specific findings must be made that under the totality of the circumstances — considering the three listed factors — the defendant's will was overborne by the agent's conduct."  *Anderson*, 929 F.2d at 99.  The defendant must show by clear and convincing evidence that the trickery "materially induced [him] to make incriminating statements."  *Mitchell*, 966 F.2d at 100.  The defendant has not met his burden in this regard because he has not submitted an affidavit indicating that the Officers' trickery did in fact induce his confession.  The Court is mindful that the ruse the defendant complains of appears to have had some effect on him — he put his head in his hands (2:10) and remarked that he would not have sold drugs to R.G. had he known that R.G. sold to children, as the defendant has six children of his own (3:25).  However, absent a sworn statement from the defendant, the Court can only speculate as to whether the Officers' ruse, as opposed to perhaps the defendant's desire to cooperate or his misguided belief that cooperation would secure his release, was what led him to confess.

Relatedly, the defendant contends that his confession should be deemed involuntary because the Officers failed to inform him of R.G.'s death. According to the defendant, this omission precluded him from appreciating the "magnitude of his offense" and the "stakes" of his confession. (Dkt. No. 11 ¶¶11-12). Contrary to the defendant's argument, "a criminal defendant need not have perfect knowledge of all the circumstances and consequences of his waiver of his Fifth Amendment rights in order for his confession to be voluntary." *United States v. Valdez*, 16 F.3d 1324, 1329 (2d Cir. 1994); *see also Colorado v. Spring*, 479 U.S. 564, 576-77 (1987) ("[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.") (alteration in original) (quoting *Moran v. Burbine*, 475 U.S. 412, 422 (1986)).

In sum, a careful evaluation of the totality of the circumstances surrounding the interview shows that the defendant's statements were voluntary. The defendant's characteristics — namely, his age, education, intelligence, and criminal experience — suggest that his statements were of his own free will. The conditions of the interrogation likewise do not suggest coercion — the defendant was interviewed during the daytime for less than one hour, and he was seated comfortably from start to finish. As for the conduct of Officers Bullard and Jasinski, the Officers never promised the defendant that his cooperation would result in his release. While they did misrepresent that they were not "looking" at the defendant, but at R.G, the defendant has not submitted any evidence indicating that he confessed on account of this ruse. The Court thus finds that the oral and written statements the defendant made during his interview

with Officers Bullard and Jasinski were voluntary.   It is recommended that the defendant's motion to suppress statements be denied.

II.    _Motion to Exclude Statements by Non-Testifying Co-Conspirators_

The defendant moves to exclude at trial any post-arrest statements of non-testifying co-conspirators.  (Dkt. No. 11 ¶18).  In response, the government states that it presently has no intention of seeking to introduce into evidence any statements of non-testifying co-conspirators, and, moreover, that it is not even aware of any co-conspirators to the charges in the Indictment.  (Dkt. No. 12 at 11).  Based on the government's representations, the defendant's motion is denied.

III.    _Motion for a Bill of Particulars_

The defendant moves under Rule 7(f) for a bill of particulars.  (Dkt. No. 11 ¶¶19-25).  Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  _United States v. Bortnovsky_, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  _United States v. Walsh_, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks and citation omitted).  "[T]he burden is upon defendant[ ] to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendant['s] rights."  _United States v. Duarte_, No. 13CR204A, 2014 WL 29366, at *1 (W.D.N.Y. Jan. 3, 2014) (citation omitted).  The Court "has the discretion to deny a bill of particulars 'if the

information sought by defendant is provided in the indictment or in some acceptable alternate form.'"  *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (quoting *Bortnovsky*, 820 F.2d at 574); *see also United States v. Messina*, No. 11-CR-31(KAM), 2012 WL 463973, at *10 (E.D.N.Y. Feb. 13, 2012) ("In determining whether a defendant has shown [the] necessity [for a bill of particulars], the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery.") (internal quotation marks and citation omitted).  "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court."  *Bortnovsky*, 820 F.2d at 574.

Here, without specifying any areas of particularization, the defendant contends that he needs a bill of particulars because the Indictment is "bare bones."  (Dkt. No. 11 ¶25).  Even accepting the defendant's argument regarding the nature of the Indictment, he does not dispute having received voluntary disclosure detailing his alleged participation in the indicted crimes.  Indeed, the defendant's pre-trial motions provide a fairly detailed summary of his alleged conduct, which shows that he fully understands the charges against him.  The allegations in the Indictment, together with the discovery provided to the defendant, allow him to identify the nature of the charges pending against him, to prepare his defense, and to preclude his prosecution for the same offense on another occasion.  Therefore, the defendant's motion for a bill of particulars is denied.

IV.    *Motion to Reveal Identity of Informants*

The defendant moves for disclosure of the identity of any informants in this case. (Dkt. No. 11 ¶¶26-47).    The government states in response that it "knows of no

informants here." (Dkt. No. 12 at 13). Based on the government's representation, the defendant's motion is denied.

V.    *Motion for Discovery Pursuant to Rule 16*

The defendant moves for discovery and inspection pursuant to Rule 16. (Dkt. No. 11 ¶¶48-68). Rule 16 requires the government to disclose certain evidence and information upon the request of the defendant. *See* Rule 16(a). "Although Rule 16(a) provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) written, recorded, or oral statements of the defendant that are in the possession of the government; (2) the defendant's prior record; (3) certain documents and objects; (4) certain results or reports of examinations and tests; and (5) expert witness information. *See* Rule 16(a)(1).

Here, the government states: it has produced relevant statements made by the defendant (some of which are the subject of his suppression motion); it will produce a copy of the defendant's criminal record; it has produced and allowed inspection of the documents and objects that are discoverable under Rule 16[5]; it has disclosed all reports of examinations and tests that are discoverable under Rule 16, including forensic laboratory analyses regarding controlled substances and autopsy reports; it will provide

---

[5]    Specifically, the government states that it produced the following documents and objects, some of which were redacted: dispatch log and reports by the Town of Hamburg Police Department regarding the overdose death of R.G., screenshots of text message exchanges on R.G.'s cell phone, photographs of evidence from the defendant's arrest on February 26, 2016, controlled substance analysis reports and documents, written *Miranda* waiver and statements by the defendant, fatality certification and supporting reports for R.G.'s death, the application and search warrant for the defendant's two cell phones, additional reports and referenced note provided by R.G.'s mother, CDs containing audio recording of the 911 call reporting the death of R.G., scene photographs, audio/video recording of the defendant's post-arrest interview, and results of digital forensic analysis of the defendant's two cell phones. (Dkt. No. 12 at 2).

any additional laboratory reports immediately upon its receipt of same; and it will provide expert witness CVs and summaries of anticipated expert testimony in accordance with the scheduling order entered by the assigned District Judge. (Dkt. No. 12 at 13-15). The government further represents that it will continue to comply with the requirements of Rule 16. (*Id.* at 14). Based upon these representations, the Court finds that the government is in compliance with Rule 16. The defendant's motion for discovery is therefore denied as moot. The government is reminded that its disclosure obligations continue up through and during trial. *See* Rule 16(c).

Pursuant to Rule 12(b)(4)(B), the defendant also moves for notice of the government's intent to use in its case-in-chief at trial any evidence that he may be entitled to under Rule 16. (Dkt. No. 11 ¶¶51-53). The government states in response that it intends to use all items of evidence that the defendant has been provided with or been made aware of. (Dkt. No. 12 at 23). Therefore, this branch of the defendant's discovery motion is also denied as moot.

Finally, in connection with his motion for discovery, the defendant states that he "moves to suppress the fruits of the search of his person" upon his arrest in the Walmart parking lot. (Dkt. No. 11 ¶59). The defendant provides minimal argument in support of this request and made no mention of it at oral argument. In addition, the request is not supported by the affidavit of someone with personal knowledge of the arrest and search. Thus, it is recommended that the request be denied. *See United States v. Samuel*, No. 09-CR-128A(Sr), 2010 WL 1644253, at *2 (W.D.N.Y. Apr. 7, 2010) ("An argument supported by airy generalities, conclusory assertions and inadmissible evidence is insufficient to create a genuine issue of fact necessitating an evidentiary

hearing. On this basis alone, it is recommended that defendant's motion to suppress unspecified statements, unidentified evidence and audiotape evidence and request for a suppression hearing be denied.") (internal quotation marks, citations, and alteration omitted), *report and recommendation adopted*, 2010 WL 1644245 (W.D.N.Y. Apr. 22, 2010).

VI.  *Motion to Compel Production of Brady/Giglio Material*[6]

The defendant moves for the immediate disclosure of *Brady/Giglio* material. (Dkt. No. 11 ¶¶69-90). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." *Id.* at 146.

Here, the government states that it "is fully aware of its obligations and responsibilities under *Brady*," and it "acknowledges its continuing duty under *Brady* to produce such material, if and when it is aware of it." (Dkt. No. 12 at 16). With respect to *Giglio* material, the government states that it will provide such material "in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act material in this case." (*Id.* at 17-18). Given the government's representations, the defendant's motion to compel the immediate production of *Brady/Giglio* material is denied. Consistent with *Coppa*, the

---

[6]      *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

government shall timely disclose *Brady* and *Giglio* material to the defendant. *See United States v. Padovani*, No. 14-CR-00224-WMS-JJM, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

VII.   *Motion for Disclosure of Evidence Pursuant to Rules 404(b), 608, and 609 of the Federal Rules of Evidence*

The defendant seeks pre-trial notice of any evidence the government intends to introduce at trial under Rules 404(b), 608, and 609 of the Federal Rules of Evidence. (Dkt. No. 11 ¶¶91-95). The government states in response that it "will provide notice of such information to the defense pursuant to the District Court's trial Scheduling Order, which has yet to be issued." (Dkt. No. 12 at 18). Based on the government's representation, this branch of the defendant's motion is denied as moot. *See United States v. Jones*, No. 13-CR-193-RJA, 2014 WL 2800780, at *6 (W.D.N.Y. June 19, 2014).

The defendant also requests discovery of all information that may be used to impeach any witness the government intends to call at trial. (Dkt. No. 11 ¶94). The Court addressed impeachment material under Point VI, *supra*.

VIII.  *Motion for Disclosure of Witness Statements*

The defendant moves for the immediate disclosure of witness statements. (Dkt. No. 11 ¶¶96-98). Under the Jencks Act, 18 U.S.C. §3500, the government, on motion of the defendant, must produce any prior statement of a witness which relates to the subject matter of the witness' testimony that is in the government's possession after the direct examination of the witness. A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness;

(2) a substantially verbatim recording or transcription of a witness' oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. §3500(e). Such statements are not required to be disclosed under the Jencks Act until after the witness has testified on direct examination, and the Court lacks the authority to order early disclosure of such statements. *See Percevault*, 490 F.2d at 129. Nonetheless, the government states that it will disclose all Jencks Act material no later than two weeks prior to trial or as ordered by the assigned District Judge. (Dkt. No. 12 at 20). Accordingly, the defendant's motion for early disclosure of witness statements is denied.

IX.     *Motion for Preservation of Rough Notes and Other Evidence*

The defendant moves for preservation of rough notes and all evidence acquired in the investigation of him. (Dkt. No. 11 ¶¶99-101). Although the government states that it has no objection to government agents retaining notes taken during the investigation of this case, it makes no representations concerning the preservation of other evidence. (Dkt. No. 12 at 21). Therefore, the motion is granted, and "[t]he government is directed to preserve all rough notes and items of evidence." *Jones*, 2014 WL 2800780, at *6 (quoting *United States v. Coates*, No. 11CR27A, 2013 WL 3897484, at *5 (W.D.N.Y. July 29, 2013)).

X.     *Motion for Grand Jury Transcripts*

The defendant moves to compel disclosure of transcripts of all testimony before and all exhibits considered by the grand jury that indicted him,[7] arguing that disclosure is necessary because he "is the subject of a bare bones Indictment" and needs to be

---

[7]     The defendant actually states that he is moving to compel disclosure of all testimony before and all exhibits considered by the grand jury that indicted "Mr. Ali." (Dkt. No. 11 ¶102). The Court presumes that the defendant meant to say the grand jury that indicted him, not Mr. Ali.

"informed of what evidence actually exists against him . . . so [that] he can intelligently make a decision as to his course of action."  (Dkt. No. 11 ¶¶102-03).  The burden rests on the defendant "to show a particularized need [for the grand jury materials] that outweighs the need for secrecy."  *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)).  The defendant's generalized claim that he needs the materials to decide how to proceed in the instant case fails to meet this standard.  *See Jones*, 2014 WL 2800780, at *7. Therefore, the defendant's motion is denied.   The Court notes, however, that "transcripts of grand jury testimony of witnesses called by the government to testify at trial must be made available to the defendant pursuant to and in accordance with the provision[s] of 18 U.S.C. §3500."  *United States v. Mehta*, No. 11-CR-268S(Sr), 2013 WL 1878903, at *11 (W.D.N.Y. May 3, 2013).

XI.   *Motion to Voir Dire Government Experts Outside the Presence of the Jury*

The defendant moves for permission to *voir dire* any proposed government experts outside the presence of the jury.  (Dkt. No. 11 ¶¶103-08).  The government does not object to this request, but it states that the District Judge is better suited to address it upon the scheduling of the trial.  (Dkt. No. 12 at 22).  The Court agrees that the assigned District Judge is better suited to address this motion, and the motion is therefore denied without prejudice to renewal before the assigned District Judge.

XII.   *Motion for an Audibility Hearing*

The defendant moves for a hearing to determine whether any recordings the government seeks to introduce at trial are audible.  (Dkt. No. 11 ¶¶109-10).  The government states that it has disclosed all audio recordings to the defendant, none of

which are unintelligible. (Dkt. No. 12 at 22-23). As the defendant has not specified what recordings or portions thereof he believes are inaudible, his motion for an audibility hearing is denied without prejudice to renewal in the event he identifies an audibility issue that needs to be resolved. *See Jones*, 2014 WL 2800780, at *6.

XIII. <u>*Motion for Leave to File Other Motions*</u>

The defendant moves for leave to file other motions. (Dkt. No. 11 ¶¶111-13). To the extent the defendant requests to file other motions based upon new information or evidence that has not yet been disclosed, the request is granted. To the extent the defendant intends to file other motions concerning issues that could have been raised prior to the previous motion deadline, the defendant's request is denied without prejudice to filing the motion upon a showing of good cause for the untimely filing.

XIV. <u>*Government's Motion for Reciprocal Discovery*</u>

Pursuant to Rule 16(b), the government requests: (1) that it be permitted to inspect and copy books, papers, documents, photographs, and tangible objects within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence at trial; (2) that it be allowed to inspect and copy any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case within the possession, custody, or control of the defendant which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at trial when the results or tests relate to that testimony; and (3) upon the assigned District Judge setting a trial date and entering a scheduling order, that the defendant provide a summary of any testimony that the defendant intends to use at trial under Rules 702, 703, or 705 of the

Federal Rules of Evidence.  (Dkt. No. 12 at 23-24).  The defendant does not oppose the government's request for reciprocal discovery.  The government's motion is granted.  *See* Rule 16(b)(1)(A)-(C).

## CONCLUSION

For the foregoing reasons, it is recommended that the defendant's motion to suppress statements be denied.  The defendant's non-dispositive pre-trial motions are granted in part and denied in part as set forth herein.  The government's motion for reciprocal discovery is granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report, Recommendation, and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation, and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Skretny.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation, and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED**.

Dated:    June 5, 2017
          Buffalo, New York

/s/ Michael J. Roemer
MICHAEL J. ROEMER
United States Magistrate Judge