UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

CARLIQUE DeBERRY,

           Defendant.

**DECISION AND ORDER**
16-CR-142S

## I. INTRODUCTION

Presently before this Court is Defendant Carlique DeBerry's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, DeBerry's motion is denied.

## II. BACKGROUND

On December 20, 2017, DeBerry appeared before the Honorable Michael J. Roemer, United States Magistrate Judge, and pleaded guilty to distribution of fentanyl causing death, in violation of 21 U.S.C. § 841 (a)(1). (Docket Nos. 30, 31, 32.) This Court accepted DeBerry's guilty plea on January 24, 2018. (Docket No. 37.) Approximately one year later, on February 6, 2019, this Court sentenced DeBerry to 240 months' imprisonment, 3 years' supervised release, a $100 special assessment, and no fine, fees or costs. (Docket Nos. 55, 56.) DeBerry is presently serving his sentence at USP Canaan, with a release date of April 22, 2033.[1]

On August 17, 2020, DeBerry filed a pro se motion for compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i). (Docket No. 58.) He contends that release is

---

[1] See https://www.bop.gov/inmateloc/ (last visited December 15, 2020).

1

warranted because he is at heightened risk of severe illness from COVID-19 due to his medical conditions. The government opposed DeBerry's motion on September 8, 2020. (Docket No. 60.) DeBerry filed several more submissions, and the government filed a sur-reply. (Docket Nos. 61, 62, 66, 67.) Briefing concluded on December 8, 2020, at which time this Court took DeBerry's motion under advisement without oral argument.

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

2

Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's

3

defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease

---

general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

      and advanced dementia.

  (ii)  The defendant is—

    (I)  suffering from a serious physical or medical condition,

    (II)  suffering from a serious functional or cognitive impairment, or

    (III)  experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[4] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

  (1) (A) extraordinary and compelling reasons warrant the

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited December 15, 2020)). But this Program Statement does not constrain this Court's consideration of what qualifies as extraordinary and compelling reasons for compassionate release. As the Second Circuit recently held, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." United States v. Brooker, 976 F. 3d 228, 234-37 (2d Cir. 2020); see also United States v. Marks, 455 F. Supp. 3d 17, 22-25 (W.D.N.Y. 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

>> reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 448 F. Supp. 3d at 186.

**B.    DeBerry's Motion for Compassionate Release**

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused. See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 454 F. Supp. 3d 217, 220-223 (W.D.N.Y. 2020); accord United States v. Montanez, 458

6

F. Supp. 3d 146, 149-160 (W.D.N.Y. 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, DeBerry submitted his request for compassionate release to the warden of USP Canaan on July 3, 2020. (Docket No. 60-1.) The warden denied his request on July 10, 2020. (Docket No. 60-2.) Thirty days having lapsed since July 3, 2020, this Court finds that DeBerry has satisfied the statutory exhaustion requirement, and the government concedes as much. (See Memorandum of Law, Docket No. 60, p. 6.)

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

DeBerry has more than 12 years left to serve of his 20-year sentence. He is 42 years old and suffers from several documented medical conditions, including hypertension and sickle cell trait, which he argues makes him highly susceptible to severe illness from COVID-19. DeBerry's recent medical records confirm these diagnoses. (See Medical Records, Docket No. 66, Exhibits A and B.) There is, however, no diagnosis for diabetes or pre-diabetes. (See Motion for Compassionate Release, Docket No. 58, p. 1 (claiming "borderline diabetic/pre-diabetes" condition). If released, DeBerry plans to live with his wife and children in Buffalo, N.Y. (See id. p. 2.)

Having thoroughly reviewed the record, this Court finds that none of DeBerry's medical conditions constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13. None of the conditions are a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor are any a serious condition, impairment, or age-related deterioration that substantially diminishes DeBerry's ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). See United States v. Korn,

7

15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).  Moreover, DeBerry has not demonstrated that the Bureau of Prisons is unable to treat his medical conditions.  Indeed, the medical records reflect frequent care and attention to DeBerry's health issues, including treatment for his hypertension and monitoring of his sickle cell trait condition.

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, DeBerry argues that his medical conditions make him highly susceptible to severe illness from COVID-19.  See United States v. Resnick, 451 F. Supp. 3d 262, 270 (S.D.N.Y. 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).  Such is not the case.

COVID-19 is the sweeping, potentially deadly disease at the center of an ongoing worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  See Proclamation No. 9994, 85 Fed. Reg. 15,337-38 (March 13, 2020).  The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[5]  See Jones v. Wolf, 467 F. Supp. 3d 74, 87 (W.D.N.Y. 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe

---

[5] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited December 15, 2020).

8

medical conditions and has increased lethality") (quoting Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease (COPD), heart conditions (e.g., heart failure, coronary artery disease, cardiomyopathies), immunocompromised state from solid organ transplant, obesity (body mass index of 30-39), severe obesity (body mass index greater than 40), *sickle cell disease*, smoking, and Type 2 diabetes mellitus.[6]  The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including hypertension.[7]

DeBerry does not suffer from any condition that places him in the high-risk category.  Although he indicates in his papers that he suffers from "sickle cell," see, e.g., Motion for Compassionate Release, Docket No. 58, p. 1, or "sickle cell trait disease," see e.g., Memorandum of Law, Docket No. 61, pp. 1, 5, 6, the medical records make clear that he has sickle cell *trait*, not sickle cell *disease*.  The two conditions are distinct.

According to the CDC, sickle cell *disease*, which DeBerry does *not* have, is an inherited disorder that causes an individual's red blood cells to be misshapen.[8]  The misshapen cells die early, resulting in a constant shortage of red blood cells, and sometimes the misshapen cells can get stuck and restrict blood flow, resulting in pain and other serious problems, such as infection, acute chest syndrome, and stroke.[9]  Sickle cell *trait*, on the other hand, which DeBerry *does* have, is simply the state of having one

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited December 15, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited December 15, 2020).

[8] See https://www.cdc.gov/ncbddd/sicklecell/facts.html (last visited December 15, 2020).

[9] See https://www.cdc.gov/ncbddd/sicklecell/facts.html (last visited December 15, 2020).

inherited sickle cell gene and one inherited normal gene.[10]  Individuals with sickle cell *trait* do not suffer the same symptoms as those with sickle cell *disease*, but they can pass the sickle cell trait to their children.[11]

The high-risk condition identified by the CDC is sickle cell *disease*, not DeBerry's sickle cell *trait*.  DeBerry therefore does not suffer from any of the high-risk medical conditions listed above and is thus not at elevated risk of severe illness from COVID-19.  He simply (and understandably) fears contracting COVID-19 while incarcerated.  Such a generalized fear, however, does not constitute an extraordinary and compelling reason for compassionate release.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) ("the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease"); United States v. Jaramillo, No. 17 CR 4, 2020 WL 2306564, at *1 (S.D.N.Y. May 8, 2020) (denying compassionate release where defendant failed to demonstrate a specific medical condition that placed him at extraordinary risk of infection or severe illness from COVID-19); United States v. Eberhart, 448 F. Supp. 1086, 1090 (N.D. Cal. 2020) ("[g]eneral concerns about possible exposure

---

[10] See https://www.cdc.gov/ncbddd/sicklecell/traits.html (last visited December 15, 2020).

[11] See https://www.cdc.gov/ncbddd/sicklecell/traits.html (last visited December 15, 2020).

to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13").

Moreover, although USP Canaan is presently in the midst of a COVID-19 outbreak with 45 inmate and 18 staff cases,[12] see United States v. Massey, Case No. 5:18 CR 487, 2020 WL 7136877, at *2 (N.D. Ohio Dec. 7, 2020) (recognizing a present outbreak of COVID-19 at USP Canaan), DeBerry has made no showing that the Bureau of Prisons is ignoring the outbreak or unable to treat him if he contracts the virus. See United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020) (finding that "the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme"); Korn, 2020 WL 1808213, at *6; see also United States v. Gagne, 451 F. Supp. 3d 230, 235 (D. Conn. 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to

---

[12] https://www.bop.gov/coronavirus/ (last visited December 15, 2020).

11

adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has implemented a multi-point plan to battle COVID-19, including at USP Canaan. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[13] This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours.[14] These and other measures are in effect at USP Canaan and are constantly reassessed to further mitigate the exposure and spread of COVID-19. See, e.g., United States v. Tesseneer, 1:11-cr-29-MR, 2020 WL 7344713, at *2-3 (W.D.N.C. Dec. 14, 2020) (fully explaining the Bureau of Prisons' COVID-19 mitigation measures).

In the end, DeBerry asserts only the general possibility that he could contract COVID-19, and he has made no showing that USP Canaan's plan and efforts to combat the disease are lacking or that the facility is unable to adequately treat him if he falls ill. Consequently, this Court finds that DeBerry fails to demonstrate an extraordinary and compelling reason for a sentence reduction under U.S.S.G. § 1B1.13 comment n. 1 (D) based on COVID-19. See United States v. Quinones, 13-CR-83S (1), 2020 WL 4529365, at *5 (W.D.N.Y. Aug. 6, 2020) (finding no extraordinary or compelling reasons for

---

[13] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited December 15, 2020).

[14] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited December 15, 2020).

compassionate release for high-risk defendant in facility with 53 inmate cases); United States v. Robinson, Case No. 17-cr-318 (SRN/DTS), 2020 WL 4463363, at *7 (D. Minn. Aug. 4, 2020) (finding that the heightened risk of contracting COVID-19 at facility with numerous cases does not automatically justify compassionate release); see also Korn, 2020 WL 1808213, at *6-8 (denying compassionate release to defendant who failed to show inadequacy in Bureau of Prisons plan or ability to treat him).

### 3. Consideration of the § 3553 (a) Factors

Even if DeBerry had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors, and that DeBerry's original sentence would be severely undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 430-31.  The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

On the night of February 25, 2016, DeBerry, who was on supervised release stemming from his previous federal bank fraud conviction, delivered $40 worth of "heroin" to the home of a repeat drug customer named Richard.  (Presentence Investigation Report, Docket No. 39, ¶¶ 9, 48.)   Shortly thereafter, Richard's mother found him unresponsive and slumped in a chair. Id.  Emergency responders attempted to revive

Richard for 25 minutes, finally pronouncing him dead of a fatal overdose at the scene. Id. He died of acute fentanyl intoxication from the "heroin" that DeBerry sold him. Id. ¶ 12. The next day, law enforcement surreptitiously arranged a meeting with DeBerry, who arrived with 10 more packs of fentanyl intended for distribution. Id. ¶ 11.

For this serious criminal activity involving death, this Court imposed a 20-year sentence. This is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id. Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, this Court finds that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2). This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

DeBerry has an extensive criminal history spanning more than two decades. He has convictions for offenses involving firearms (Presentence Investigation Report, ¶¶ 31, 32), motor vehicle and traffic offenses (id. ¶¶ 33-37, 41), controlled substances (id. ¶¶ 38, 43), assault (id. ¶¶ 39, 44), and bank fraud (id. ¶ 45). His criminal acts include beating an individual with a pipe (id. ¶ 30), shooting at multiple individuals (id. ¶¶ 31, 32), beating

and stabbing a female drug customer for shorting him $5 in a drug transaction (id. ¶ 39), and beating his wife (id. ¶ 44). And of course, he sold at least one fatal dose of fentanyl in this case and would have sold ten more if he had not been apprehended.

Accordingly, given the nature and extent of DeBerry's criminal history and the serious consequences of his drug-trafficking activities, this Court finds that he poses a danger to the community if released.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release and a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. DeBerry's motion will therefore be denied.

## V. ORDER

IT HEREBY IS ORDERED, that DeBerry's Motion for Compassionate Release (Docket No. 58) is DENIED.

SO ORDERED.

Dated:     December 17, 2020
           Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge